IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESSICA LITZINGER                    *

        Plaintiff                    *

v.                                   *        Civil Action No.: JFM-02-4115

BRADLEY A. MCGUIRK                   *

        Defendant                 *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT S MOTION FOR SUMMARY JUDGMENT

      Bradley A. McGuirk, Defendant, submits this Memorandum of Law in Support of his Motion for Summary Judgment in this action.

STATEMENT OF THE CASE

      On, or about December 18, 2002, Plaintiff Jessica Litzinger, through counsel, filed the instant single count Complaint against Defendant Bradley A. McGuirk, a Maryland State Trooper.  The Complaint seeks to allege a cause of action for violation of 42 U.S.C. §1983  and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.   See, Complaint and Demand for Jury Trial (hereinafter  Complaint ).

      The Complaint seeks compensatory damages against Defendant McGuirk, in his individual capacity, in the amount of $2,000,000 and punitive damages of $1,000,000, as well as attorneys fees and costs for Defendant McGuirk s alleged arrest, handcuffing, and

failure to provide prompt medical attention to the Plaintiff at the scene of a single car motor vehicle crash on December 19, 1999.

On September 5, 2003, Defendant McGuirk filed his Answer to the Complaint. Discovery having been completed, Defendant McGuirk now files his Motion for Summary Judgment asserting that Plaintiff s Complaint fails to state a claim upon which relief can be granted, McGuirk is entitled to qualified immunity and judgment as a matter of law.

## STATEMENT OF FACTS

The Plaintiff alleges in her Complaint that on December 19, 1999, around 2:00 a.m., she was a passenger in a vehicle that was involved in a single car crash in Cecil County, Maryland. (Complaint at pars. 5 & 7). The vehicle in which Plaintiff claims she was a passenger was actually a vehicle owned by her and registered to her. (See, Deposition of Bradley A. McGuirk, pp. 40-41 attached hereto as Exhibit A.) (See, also, State of Maryland Motor Vehicle Accident Report #99-55-19372, attached hereto as Exhibit B.)[1]

Trooper First Class Bradley A. McGuirk, a Maryland State Trooper, was dispatched to the scene of collision to respond to and investigate the accident. (Complaint at par. 8.) Upon McGuirk s arrival at the scene of the collision, he observed and subsequently spoke to several people standing by an overturned car. (McGuirk

---

[1] Defendant McGuirk authenticated the Accident Report attached hereto as Exhibit B as having been authored by him. (McGuirk Deposition, Exhibit A at 17).

Deposition Exhibit A at 26-27). He subsequently identified and spoke to Plaintiff, Jessica Litzinger and John Brandon Everett, who were two of the people standing on the embankment by final resting place of the car. (McGuirk Deposition, Exhibit A at 27-28). (See also, Complaint, at par. 6).

Defendant McGuirk inquired of the people standing near the wrecked car, which included Plaintiff and Mr. Everett, as to whether or not there were any injuries and if an ambulance was needed. (McGuirk Deposition Exhibit A at 32). He observed no obvious injuries and no one requested an ambulance at that time. (McGuirk Deposition Exhibit A , 32-33). (See also, John Brandon Everett s Answers to Interrogatories, taken in <u>Jessica Litzinger v. John Brandon Everett</u>, Circuit Court for Cecil County, Case No. C-01-17, Interrogatory Answer No. 21, pages 1, 10, & 12, attached hereto as Exhibit C . )[2]

Defendant McGuirk began to investigate the collision and determined that both Jessica Litzinger and Brandon Everett denied driving the now-wrecked car each stating the other one was driving. (McGuirk Deposition, Exhibit A at 35). In order to further his investigation, McGuirk placed an intoxicated Ms. Litzinger in handcuffs, and into his

---

[2] Because Plaintiff Litzinger claims she has no recollection of the events from the time she and Mr. Everett left Fallston Station Bar to waking up in the police car with handcuffs , the intervening factual events have had to be recreated with testimony of other witnesses, under oath. See, Deposition of Plaintiff in <u>Litzinger v. Everett</u>, Circuit Court for Cecil County, Case No. 07-C-01-017, pp. 1-4, 50-55, attached hereto as Exhibit D . See also, Deposition of Plaintiff, in <u>Litzinger v. McGuirk</u>, pp. 1-3, 76, attached hereto as Exhibit E .

police car in  investigative detention.  (McGuirk Deposition, Exhibit  A  at 50-52).

Plaintiff had no difficulty in walking to the Maryland State Police car in which she was

seated, nor complained of any pain or had visible injuries.  (McGuirk Deposition, Exhibit

 A  at 60 & 62).

     While Plaintiff Litzinger was seated in the police car she was questioned by

Defendant McGuirk in furtherance of his collision investigation.  (Complaint at par. 11).

McGuirk then elected to twice call his supervisor, Sergeant Blades, because, he,

McGuirk,  had questions  as to how to proceed with his investigation.  (McGuirk

Deposition, Exhibit  A  at 30-32, 63-65).  Upon his return to his police car where

Plaintiff Litzinger was seated, he observed her to be  gasping for air, saying she couldn t

breathe.   Defendant McGuirk then called an ambulance for her.  (McGuirk Deposition,

Exhibit  A  at 65-66.)  See also, (Litzinger Deposition, Exhibit  E  at 79).

     Ms. Litzinger does not know how long she was sitting in the trooper s police car

before the arrival of the ambulance.  (Litzinger Deposition, Exhibit  E  at 82).  However,

upon arrival of the ambulance, she was unhandcuffed, and placed on a stretcher and

 loaded into the ambulance.   (Litzinger Deposition, Exhibit  E , at 90-91.)  Ms.

Litzinger was then transported to Harford Memorial Hospital for treatment.  (Litzinger

Deposition, Exhibit  E  at 97).

     Trooper McGuirk remained at the collision scene to await a tow service to remove

Ms. Litzinger s car.  (McGuirk Deposition, Exhibit  A  at 70-71.)  From an examination

of the Litzinger car and interview of witnesses, Trooper McGuirk was unable to

determine with certainty who was the driver of the wrecked car. (McGuirk Deposition, Exhibit A , 75, 91-92). Upon removal of the wrecked car, Trooper McGuirk cleared the scene . (McGuirk Deposition, Exhibit A at 71). No further investigation was completed by Trooper McGuirk.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(b) allows for a defending party to file a motion for summary judgment, with or without affidavits, at any time. Defendant Bradley A. McGuirk hereby represents to this Honorable Court that upon consideration of the pleadings and discovery materials, including depositions and answers to interrogatories, there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is proper, after adequate time for discovery, against a party who fails to make a showing sufficient to establish existence of an element essential to that party s case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). See also, Drewitt v. Pratt, 999 F.2d 774, 778 (4th Cir. 1993). When there is such a failure by the Plaintiff, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element...renders all other facts immaterial. Celotex Corp., 477 U.S. at 322, 106 S.Ct. at 2552.

The instant case, as with virtually any contested case, has some alleged factual disputes. However, because those factual disputes are not of material facts , mere

existence of such disputes will not defeat an otherwise properly supported motion.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510 (1986),

Drewitt, 999 F.2d at 778.  A  material fact  is dependent upon the substantive law and

one that might affect the outcome of the suit.  Anderson, 477 U.S. at 248, 106 S.Ct. at

2510.  Such, of course, does not include factual disputes that are irrelevant or

unnecessary.  Id.

The Defendant herein recognizes that in determining whether or not a party is

entitled to summary judgment, the record before the reviewing court is viewed in a light

most favorable to the non-moving party.  Hooven-Lewis v. Caldera, 249 F.3d 259, 265

(4th Cir.2001).  Only  justifiable inferences  are to be drawn in favor of the non-moving

party.  Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.  The Plaintiff, however,  cannot

create a genuine issue of material fact through mere speculation or the building of one

inference upon another.   Runnebaum v. NationsBank of Maryland, N,.A., 123 F.3d 156,

164 (4th cir. 1997) quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

It is well recognized that only  reasonable  inferences from the evidence need be

considered by the court.  Sylvia Development Corp. v. Calvert County, MD., 48 F.3d 810,

818 (4th Cir. 1995).  Additionally, it is the  affirmative obligation of the trial judge to

prevent factually unsupported claims and defenses from proceeding to trial.   Felty v.

Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477

U.S. at 323-24, 106 S.Ct. at 2553.).

I.    DEFENDANT MCGUIRK IS ENTITLED TO
          QUALIFIED IMMUNITY

The Defendant, a Maryland State Trooper, is entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated plaintiff s clearly established constitutional right.  Anderson v. Creighton, 483 U.S. 633, 640, 107 S.Ct. 3034, 3039 (1987).  Qualified immunity is  an immunity from suit rather than a mere defense to liability and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.   Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985).  It is appropriate to give significant deference to the judgment of government officials, such as police officers, acting in good faith while investigating serious crimes.  Porterfield v. Lott, 156 F.3d 563, 567-68 (4th Cir. 1998).

Qualified immunity  is intended to allow public officials to act, with independence and without fear of consequence, where their actions do not implicate clearly established rights.   Turner v. Dammon, 848 F.2d 440, 443 (4th Cir. 1988) abrogated on other grounds by Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151 (1995)  quoting Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218 (1987).

The defense of qualified immunity acknowledges that a police officer can make reasonable mistakes regarding the  legal constraints on particular police conduct. Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 2158 (2001).  Government officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).

The purpose of qualified immunity is to spare police officers the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the scope of reasonable judgment.  Gooden v. Howard County, 954 F.2d 960, 965 (4th Cir. 1992).   In fact, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law.   Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).  The granting of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits.  Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991).  In the instant matter, Trooper McGuirk was neither plainly incompetent nor knowingly violated any law.

The Fourth Circuit has created a three part test for these matters by stating:

> Ruling on a defense of qualified immunity...requires
> (1)   identification of the specific right allegedly violated;
> (2)   determining whether at the time of the alleged
>        violation the right was clearly established; and
> (3)   if so, then determining whether a reasonable
>        person in the officer s position would have known
>        that doing what he did would violate that right.

Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).

Because Defendant McGuirk has asserted a qualified immunity defense, the threshold question to be considered by this Honorable Court, taken in a light most

8

favorable to the party asserting the injury, is do the facts alleged show the officer s

conduct violated a constitutional right?  Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct.

1789, 1793 (1991).  This, of course, must be done before turning to the second inquiry of

whether a constitutional right was clearly established in light of the   specific context of

the case, not as a broad general proposition....   Saucier v. Katz, 533 U.S. 194, 201, 121

S.Ct. 2151, 2156 (2001).

Clearly established   for purposes of qualified immunity means that the contours

of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.  Anderson, 483 U.S. at 640, 107 S.Ct. at 3039, Wilson

v. Layne, 526 U.S. 603, 614-615, 119 S.Ct. 1692, 1699 (1999).   This is not to say that an

official action is protected by qualified immunity unless the very action in question has

previously been held unlawful, but it is to say that in the light of pre-existing law the

unlawfulness must be apparent.   Id., quoting Anderson, 483 U.S. at 640, 107 S.Ct. at

3039.

Moreover, the right allegedly violated must be defined at the appropriate level of

specificity before a court can determine if it was clearly established.  Saucier, 533 U.S. at

202, 121 S.Ct. at 2156.  (the inquiry as to   whether the right was clearly

established...must be undertaken in light of the specific context of the case, not as a broad

general proposition.  ) Layne, 526 U.S. at 615, 119 S.Ct.. 1699-70, Wiley v. Doory, 14

F.3d 993, 995 (4th Cir. 1994) (in determining whether the particular right was clearly

established, the proper focus is not upon the right at its most general or abstract level, but

9

at the level of its application to the specific conduct being challenged.)  (citing Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).

In conducting the qualified immunity inquiry, the court looks to settled law at the time of the allegedly unconstitutional act.  Robinson v. Balog, 160 F.3d 183, 187 (4th Cir. 1998) (citing Harlow, 457 U.S. at 818).  In order to determine settled law, the Court determines whether  the law has  been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.    Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (quoting Wallace v. King 626 F.2d 1157, 1161 (4th Cir. 1980)); see also, Balog, supra, 160 F.3d at 187.  If there is a  legitimate question as to whether an official s conduct constitutes a constitutional violation, the official is entitled to qualified immunity.    Wiley, 14 F.3d at 995 (citing Tarantino v. Baker, 825 F.2d 772, 774-775 (4th cir. 1987)).

In circumstances in which the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden, though later it may be shown to have been a mistake.  Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (stating that the particularity inquiry looks to whether  in light of pre-existing law the unlawfulness [was] apparent. ) Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert denied, 506 U.S. 1080 (1993).  In order for an official to be deprived of his qualified immunity,    [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.    Gooden, 954 F.2d at 968 (quoting Anderson, 483 U.S. at 640).

10

Even if a right is clearly established, a defendant is still entitled to qualified immunity if a reasonable person in the police officer s position could have failed to appreciate that his conduct would violate that right.   Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990).   The very idea of reasonableness requires that courts accord interpretive latitude to official judgments.   Gott 895 F.2d at 998 (citing Sevigny v. Dicksey, 846 F.2d 953, 957 (4th Cir. 1988).   A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful.   Slattery v. Rizzo, 939 F.2d 213, 216-217 (4th Cir. 1991).

Relying on undisputed facts, it is clear Trooper McGuirk violated no constitutional rights of the Plaintiff.  Although, Defendant McGuirk admittedly placed Plaintiff in  investigative detention  (McGuirk Deposition Exhibit  A  p. 51), he clearly had sufficient probable cause to arrest.  That probable cause, as more fully examined in Argument II, A, contained on p.13 herein, included reason to believe that as the obviously intoxicated, registered owner of a vehicle involved in a single car crash, with the only other occupant of the wrecked car stating Ms. Litzinger was the driver, Trooper McGuirk was certainly entitled to take her into custody on the belief she violated Maryland laws prohibiting driving while intoxicated and negligent driving.  See, Md. Transp. Code Ann. § 21-902 and § 21-901.1(b), respectively.

Additionally, there is no indication that Trooper McGuirk employed any more force than was reasonable necessary to handcuff Ms. Litzinger, behind her back, and

11

placed her in his Maryland State Police Car, a practice any reasonable police officer would believe to be lawful.  (McGuirk Deposition, Exhibit  A  at pp. 59-61.)  Merely handcuffing a person placed into investigative detention does not support a claim of excessive force.

In examining Plaintiff s claim for deprivation of medical treatment, it cannot be more clear that Ms. Litzinger exhibited no visible, physical injuries at the collision scene. She was seen to be walking around the crash site without complaint of pain.  (See, Affidavit of Mr. Earl Gilbert, attached hereto as Exhibit  F .)  When initially asked by Trooper McGuirk if she was injured and wanted an ambulance, she neither complained of an injury nor requested emergency medical services.  (McGuirk Deposition, Exhibit  A  at pp. 32-33).   While seated in the police car, when she was observed to be in apparent need of medical attention Trooper McGuirk immediately used his police radio to call for an ambulance.  (McGuirk Deposition, Exhibit  A , at pp. 65-67.)  She was unhandcuffed and placed into the just-arrived ambulance.  (Litzinger Deposition, Exhibit  E  at pp. 90-91.)  The actions of Trooper McGuirk in detaining, handcuffing and questioning Plaintiff at the scene of her motor vehicle collision are those of a reasonable, prudent police officer who understood his legislatively-created duties  to detect and prevent the commission of crime; to enforce the laws and ordinances of the state and local subdivisions; to apprehend and arrest criminals and those who violate or are lawfully accused of violating such law and ordinances....   Md. Ann. Code Art. 88B § 3 (1998 Repl. Vol.) recodified as Md. Public Safety Code Ann. § 2-301(a) (2003).  His actions were nothing short of that

12

which was required by the circumstances.  Therefore, he ought to be entitled to qualified immunity.

II.    PLAINTIFF HAS FAILED TO ESTABLISH THE
REQUISITE ELEMENTS OF HER CLAIM FOR
VIOLATION OF 42 U.S.C. § 1983

When analyzing the single count Complaint, it is important to start from the premise that 42 U.S.C. § 1983  is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by parts of the United States Constitution and federal statutes it describes.   Baker v. McCollan, 443 U.S. 137, 144-45, 99 S.Ct. 2689, 2694-95 n.3 (1979.)  Thus, when Plaintiff s claims of alleged violations of the Fourth, Fifth, and Fourteenth Amendments are scrutinized in light of the undisputed facts obtained in discovery, it becomes clear that she has failed to state any claim under 42 U.S.C. § 1983, upon which relief can be granted.  I will explain.

A.    42 U.S.C. § 1983 (Fourth Amendment Seizure)

Plaintiff claims in her Complaint, that Defendant McGuirk  placed Plaintiff in handcuffs, arrested her, and forcibly placed her into the police vehicle.   (Complaint at par. 12.)  Furthermore, Plaintiff alleges  Defendant McGuirk did not have probable cause to make the arrest[.]   (Complaint at par. 16.)

Because it is clear from Plaintiff s Complaint, that her  seizure  by Trooper McGuirk is at issue, we must examine her  claims  in the light of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989.)  It is established jurisprudence that an officer may conduct a brief investigative stop and frisk if the police officer has a

reasonable suspicion based on specific and articulable facts that criminal activity may be afoot. <u>Terry v. Ohio</u>, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880 (1968.).  See also, <u>U.S. v. Sokolow,</u> 490 U.S. 1, 7, 109 S.Ct. 1581, 1585 (1989).  That is exactly what occurred when Plaintiff was briefly detained, handcuffed, and placed in a police car for investigative detention to allow Trooper McGuirk to pursue his investigation of the automobile collision and the possibility of serious traffic charges that gave rise to the crash. (McGuirk Deposition, Exhibit  A  at pp. 50-51.).

According to <u>Sokolow</u>, a seizure of the person is lawful if conducted on the basis of reasonable suspicion. <u>Id.</u>   The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances, confronting a police officer including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop the suspect.   <u>U.S. v. Crittendon</u>, 883 F.2d 326, 328 (4th Cir. 1989) citing <u>U.S. v. Cortez</u>, 449 U.S. 411, 417-18, 101 S.Ct. 690, 694-95 (1981.).

An investigative detention does not violate constitutional standards if the officer has reasonable, articulable suspicion of criminal activity.  <u>Terry</u>, 392 U.S. at 21, 88 S.Ct. at 1879.  Additionally, the use of handcuffs during a <u>Terry</u> stop is permissible to preserve <u>status quo</u> and protect the official.  <u>Crittendon</u>, 883 F.2d at 329.  In fact  [b]rief, even if complete deprivations of a suspect s liberty do not convert a stop and frisk into an arrest so long as the methods of restraining used are reasonable to the circumstances.   <u>Id.</u>

14

In short, Defendant McGuirk s detention and handcuffing of Plaintiff at the scene of her car crash on December 19, 1999, at 2:00 a.m., amounted to nothing more than a permissible investigative detention supported by specific, articulable facts. Those facts faced by Trooper McGuirk, included but were not limited to, being the only trooper dispatched to the scene of an early morning traffic collision where the passenger and operator were both intoxicated, the two parties determined to have been occupying the car each claimed the other was driving, having determined that the overturned car was registered to Ms. Litzinger, and a witness at the scene (Mr. Earl Gilbert) heard Ms. Litzinger make remarks to her male companion indicating that she was the operator of her car when it crashed. (McGuirk Deposition, Exhibit  A  at pp. 25, 30, 35, 39-41) and (Gilbert Affidavit, Exhibit  F  at par. 4). Thus, under these circumstances, Plaintiff s brief detention by Trooper McGuirk amounted to no more than an investigative detention supported by the above-named specific articulable facts. The mere handcuffing of Plaintiff,  with no more force than necessary to do so, cannot amount to a Fourth Amendment violation. (McGuirk Deposition, Exhibit  A  at pp. 58-60.)

In the alternative, careful review of the totality of the facts known to Defendant McGuirk at the time he detained Plaintiff, leads to the inescapable conclusion the Maryland State Trooper had actual probable cause to arrest her for driving while intoxicated. For probable cause to exist, there need be only enough evidence to warrant the belief of a reasonable officer that an offense has been committed.  Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407 (1963.)  It requires more than mere suspicion but less

evidence than necessary to convict the arrestee.  Porterfield v. Lott, 156 F.3d 563, 569

(4th Cir. 1998).   It is an objective standard of probability that reasonable and prudent

persons apply in everyday life.   U.S. v. Gray, 137 F.3d 765, 769 (4th Cir. 1998).   To

prove an absence of probable cause here, Plaintiff would have to allege a set of facts

which would make it unjustifiable for a reasonable officer to conclude she had violated

the law.  Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002).

    The inquiry of probable cause  does not involve the application of a precise legal

formula or test but the common sense and street-wise assessment of the factual

circumstances[.]  U.S. v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004).  Deference

should be shown to inferences judges draw from factual circumstances as well as a

 similar respect to the inferences drawn by law enforcement officers on the scene.   Id.

citing Maryland v. Pringle,   U.S.  , 125 S.Ct. 795, 799-800 (2003).

> At bottom, however, the probable-cause standard is  incapable of
> precise definition or quantification into percentages because it
> deals with probabilities and depends on the totality of the
> circumstances.  *Pringle*, 124 S.Ct. at 800.  Stripped to its essence,
> the question to be answered is whether an objectively reasonable
> police officer, placed in the circumstances, had a  reasonable
> ground for belief of guilt  that was  particularized with respect
> to the person to be searched or seized.   Id.

Humphries, at 657-58.  The short answer to  the question to be answered  in the instant

matter, is  yes.

    Trooper McGuirk was the only police officer assigned to handle the early morning

traffic collision on Ragan Road, in rural Cecil County, involving Plaintiff and Brandon

16

Everett.  He observed both of the former occupants of the wrecked car, Litzinger and Everett, to be intoxicated.[3]  Neither party showed visible signs of injury and upon inquiry from McGuirk, neither party requested an ambulance.  Both were either standing or walking around outside of the overturned vehicle.

In his investigation to determine what had happened in the collision, both Ms. Litzinger and Mr. Everett claimed the other person was the operator of the car owned by and registered to Plaintiff Litzinger.  Conversation between Litzinger and Everett was overheard by an independent witness, Mr. Earl Gilbert, that indicated Ms. Litzinger was actually driving the car at the time of the crash.

The Defendant denies arresting Plaintiff but admits to having placed her in investigative detention.    With the abundance of facts known to Trooper McGuirk at the December 19, 1999, scene of the traffic collision, he had sufficient probable cause to arrest Ms. Litzinger for violations of Maryland motor vehicle law.  The specific violation allowing a physical arrest of the suspect was Md. Transp. Code Ann. § 21-902 (2002 Repl. Vol. 2003 Supp.) driving while under the influence of alcohol.    An arrest for the misdemeanor violation is specifically provided for by Md. Transp. Code Ann. § 26-202(a)(3)(i) (2002 Repl. Vol.) See also, Md. Transp. Code Ann. § 27-101(a) (2002 Repl. Vol.) providing that violations of the Maryland Vehicle Law are misdemeanors.

---

[3]  Plaintiff acknowledges she was probably intoxicated and has no recollection of the crash taking place.  (Litzinger Deposition, Exhibit  E  at 68, 78.)

B.     42 U.S.C. § 1983 (Fourth Amendment-Excessive Force)

Having previously established that handcuffing a subject detained for investigative detention is not improper, <u>Crittendon,</u> 883 F.2d at 329, we now look to whether such conduct is permissible for an arrestee.  The unequivocal answer is  yes.

Plaintiff claims she was placed in handcuffs and  forcibly placed  into a police car.  (Complaint at par. 12, 17 & 18.).  Such claims, of course, are analyzed under the Fourth Amendment s  objective reasonableness  standard.  <u>Graham v. Connor</u>, 490 U.S. 386, 388, 394, 109 S.Ct. 1865 (1989).  The allegations as made here by Ms. Litzinger in no way rise to the level of a constitutional violation.  In evaluating them  the reasonableness of the officer s belief as to the appropriate level of force should be judged from that on-scene perspective.   <u>Saucier</u>, 533 U.S. at 205, 121 S.Ct. at 2158.

Trooper McGuirk has stated that Ms. Litzinger was placed in handcuffs without any struggle whatsoever.  (McGuirk Deposition, Exhibit  A  at pp. 58-60.)  Again, without struggle, she was escorted to, and seated in the front seat of his police vehicle.  (McGuirk Deposition, Exhibit  A  at pp. 60-61).  Plaintiff s allegations of excessive force having been used for this process are without merit.  It must be remembered that Ms. Litzinger claims she has no recollection from having thrown up after leaving the last bar she visited until she  wake[s] up in a police car.   (Litzinger Deposition, Exhibit  E at 76.).  She doesn t recall how she got from her car to the police car.  (<u>Id.</u> at 77) At that time, Ms. Litzinger was already in handcuffs.  (<u>Id.</u> at 82.)  Thus, she must have no recollection as to what, if any, force was used to seat her in the police car.

18

It is  well established that the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest.     Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) citing Saucier, 583 U.S. at 208, 121 S.Ct. at 2160.  In order to further investigate the apparent serious violations of Maryland Vehicle Law that led to the crash, it was fair and reasonable for McGuirk to handcuff Plaintiff and place her in his police car for questioning.  A standard police procedure such as handcuffing an arrestee will rarely constitute excessive force, in violation of the Fourth Amendment, where the police officers are justified in effecting the arrest.  Brown 278 F.3d at 369-70. The objectively reasonable actions of police officers should be  judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.    Graham, 490 U.S. at 396, 109 S.C. at 1872.

When viewing the actions of Trooper McGuirk from this perspective, his conduct is in complete conformance to the strictures of the Fourth Amendment.  Therefore, Plaintiff s claim, under the Fourth Amendment ought to be dismissed.

C.     42 U.S.C. § 1983 (Fifth Amendment)

Plaintiff claims that Trooper McGuirk s conduct somehow states a claim under the Fifth Amendment through 42 U.S.C. § 1983.  (Complaint at par. 1).  She is mistaken. Because the Fifth Amendment applies to and restricts only the federal government and not private persons, Plaintiff s claim fails to state a claim upon which relief can be granted.  Public Utilities Commission v. Pollak, 343 U.S. 451, 461-62, 72 S.Ct. 813, 820 (1952).  See also, Heinly v. Queen, 146 F.R.D. 102, 109 (E.D. Pa. 1993) holding that for

excessive force and false arrest claims, Pennsylvania Sate Police Officers could not have deprived plaintiff of Fifth Amendment due process due rights due to inapplicability of amendment to state actors.

> D.    42 U.S.C. § 1983 (Fourteenth Amendment)

Plaintiff claims in her Complaint, that Trooper McGuirk failed to provide immediate medical attention to her [d]espite the obviousness of [her] injuries.... (Complaint at par. 11).  She does not plead, nor can she say, that she ever requested of Trooper McGuirk emergency medical care.  To the extent Plaintiff believes her allegations state a claim under the Fourteenth Amendment, she is mistaken. I will explain.

Plaintiff s claim here of deprivation of medical treatment must be viewed under the Due Process Clause of the Fourteenth Amendment.  <u>Martin v. Gentile</u>, 849 F.2d 863 (4th Cir. 1988).  This is so because Plaintiff was a pre-trial detainee at the time she claims she was deprived of the medical attention she did not request.  It s important to note that in <u>Martin</u>, the Fourth Circuit Court of Appeals held that a police department s denial of medical treatment to a pre-trial detainee during fourteen hours of interrogation, despite having a visible cut over one eye and a piece of glass embedded in his palm did not violate the detainee s due process rights.  <u>Id.</u> at 871.

In <u>Kane v. Hargis</u>, 987 F.2d 1005 (4th Cir. 1993) it was alleged that the conduct of a male police officer, weighing almost twice as much as a female motorist he stopped, in throwing her to the ground, pinning her there, and repeatedly pushing her face into the pavement cracking three of her teeth, cutting her nose, and bruising her face, and

20

allegedly denying her medical treatment for the four hours she was in custody, did not rise to the level of a constitutional violation and the District Court s grant of summary judgment to the police officer was entirely proper. Id. at 1009.

Likewise, in Grayson v. Reed, 195 F.3d 692 (4th Cir. 1999) the Fourth Circuit Court of Appeals held that  [i]n  order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective.   Id. at 695. Deliberate indifference, of course,  is a very high standard    a showing of mere negligence will not meet it.   Id. See also, Young v. City of Mt. Ranier, 238 F.3d 567, 575 (4th Cir. 2001)  Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee s serious need for medical care.   Id. 575-76.

In the instant case, when Defendant McGuirk arrived at the scene of Plaintiff s overturned car, he observed there to be no obvious injuries to Ms. Litzinger and Mr. Everett.  Upon asking them  [d]o you need an ambulance    nobody requested one at the time.   (McGuirk Deposition, Exhibit  A  at pp. 32-33.).  In fact, although Ms. Litzinger was later diagnosed to have sustained two broken ankles, and other injuries, she was walking around the collision scene, and walked up to Mr. Earl Gilbert and hugged him.  (Gilbert Affidavit, Exhibit  F  at par. 3.)  Plaintiff later had no difficulty in walking to McGuirk s police car.  (McGuirk Deposition, Exhibit  A  at 60).

Upon being seated in the police car, admittedly in handcuffs, Ms. Litzinger did not initially complain of being in pain. In fact, no injuries to her were visible to Defendant McGuirk. (McGuirk Deposition, Exhibit A at 62). Likewise, Ms. Litzinger admits she does not believe she was visibly bleeding. (Litzinger Deposition, Exhibit E at 84.) She did not complain of pain. (McGuirk Deposition, Exhibit A at 62 & 93).

When Defendant McGuirk observed Ms. Litzinger gasping for air he asked if she needed an ambulance and then immediately called, over the police radio, to have an ambulance dispatched. (McGuirk Deposition, Exhibit A at 66). He removed the handcuffs from her for the arrival of the ambulance. (McGuirk Deposition, Exhibit A at 67).

Upon review of the above-named, undisputed facts, it cannot be more clear that Ms. Litzinger showed no visible injuries, did not initially complain of pain, and when she was observed to be in respiratory distress an ambulance was immediately called for her. Such facts, in no way, rise to the level of even simple negligence much less a constitutional claim. Therefore, Plaintiff has completely failed to state a claim for alleged deprivation of medical attention.

<u>CONCLUSION</u>

For all of those reasons stated in this Memorandum of Law, Defendant Bradley A. McGuirk is entitled to judgment as a matter of law.

Respectfully submitted,


J. Joseph Curran, Jr.,
Attorney General


_____/s/_____
Donald E. Hoffman
Assistant Attorney General
Maryland State Police
1201 Reisterstown Road
Pikesville, Maryland 21208
410-653-4227
General Bar No.: 23529


Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 20th day of August, 2004, I caused to be served, by and through E-filing with the United States District Court for the District of Maryland, Memorandum of Law in Support of Defendant s Motion for Summary Judgment to Duane A. Verderaime, Esquire, Verderaime & DuBois, P.A. 1231 North Calvert Street, Baltimore, Maryland 21202, Attorneys for Plaintiff.



_____/s/_____
Donald E. Hoffman
Assistant Attorney General
Maryland State Police