**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JESSICA LITZINGER       *

      Plaintiff       *

    v.       *     Case No.: JFM 02 CV 4115

BRADLEY MCGUIRK       *

      Defendant       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jessica Litzinger, plaintiff, by and through her attorneys, Duane A. Verderaime and Verderaime & DuBois, P.A., submits this memorandum in support of her motion for partial summary judgment and opposition to defendant's motion for summary judgment.

Defendant McGuirk, a law enforcement officer with the Maryland State Police, Cecil County, Maryland barracks, was acting under color of law when he violated plaintiff's rights during an unlawful detention, arrest, and imprisonment.

There are essentially no material facts in dispute, and as a matter of law, defendant's actions violated plaintiff's clearly established constitutional rights under the circumstances and facts known to defendant at the time.

Defendant is not entitled to qualified immunity, or summary judgment. Moreover,

1

the settled law at the time of defendant's unconstitutional acts, under the facts and circumstances not in dispute, clearly establish liability as a matter of law, and summary judgment in favor of plaintiff.

I.
Standard of Review

A motion for a summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is not appropriate. *Anderson*, 477 U.S. at 250. The moving party bears the burden of showing that there is no genuine issue as to any material facts and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of South Carolina v. State of SC*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied* 507 U.S. 972 (1993). In the motion for partial summary judgment, the burden is on the plaintiff. Likewise, in Defendant's Motion for Summary Judgment, he bears the similar burden.

As such, when ruling on a motion for summary judgment, the Court must construe the facts alleged in a light most favorable to the party opposing the motion. *See U.S. v. Dibold*, 369 U.S. 654 (1962). "A mere scintilla of evidence in support of the nonmovant's position

2

will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied sub nom, Gold v. Panalpina, Inc.*, 522 U.S. at 810 (1997). Therefore, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## II.
## Background

### A. Procedural History

Plaintiff Litzinger filed the present complaint against Maryland State Trooper Bradley A. McGuirk in his individual capacity out of events that followed from a single car automobile accident that occurred on December 19, 1999. Plaintiff's complaint is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as a result of actions taken by defendant McGuirk. Following discovery, and pursuant to the local rules of the United States District Court for the District of Maryland, and in accordance with the Court's Scheduling Order, defendant filed the initial motion for summary judgment, stating that no material facts are in dispute and that defendant is entitled to judgment as a matter of law, asserting that plaintiff's complaint failed to state a claim upon which relief can be granted, and that defendant McGuirk is entitled to qualified immunity.

In further pursuit of the Court's schedule, plaintiff now files this partial motion for summary judgment and concurrently an Opposition to Defendant's Motion for Summary Judgment, stating that the material facts to her claim are not in dispute and, therefore, she is entitled to judgment as a matter of law, and Defendant's Motion for Summary Judgment should be denied. The facts presented herein by plaintiff both support her motion and serve to defeat defendant's motion. In addition, under the undisputed material facts, defendant is not entitled to qualified immunity.

## B.  Factual Background

The following facts are uncontroverted and, for purposes of the opposition to Defendant's Motion for Summary Judgment, should be viewed in the light most favorable to plaintiff Litzinger.

At approximately 2:00 A.M. on the morning of December 19, 1999, defendant McGuirk was dispatched to a single car motor vehicle accident.  (See Exhibit 1, State of Maryland Motor Vehicle Accident Report No. 99-55-19372, and Exhibit 2, McGuirk's answers to interrogatories, response to interrogatory No. 6).  Upon his arrival at the accident scene on Regan Road, defendant McGuirk:

(1)    discovered a single car off the roadway and on an embankment (see Ex. 2);

(2)    parked his patrol vehicle approximately 50 yards behind the accident scene (see Exhibit 3, deposition of defendant McGuirk T.24:5);

(3)    noticed several people standing around the accident scene, but never saw

4

anyone in the vehicle (see Ex. 3, T.22:12);

(4)     got out of his patrol vehicle and started to investigate and gather information (Ex. 3, T.27:5);

(5)     identified the two (2) occupants of the vehicle prior to the accident as plaintiff Jessica Litzinger, and Brandon Everett (Ex. 3, T.27:12-21);

(6)     questioned plaintiff Litzinger and Mr. Everett about the accident (Ex. 2, interrogatory response No. 6);

(7)     got responses from both Litzinger and Mr. Everett that it was the other person who was driving the vehicle (Ex. 2, response to interrogatory No. 6);

(8)     concluded that both individuals had a strong odor of alcoholic beverage on their breath and had glassy bloodshot eyes (Ex. 2);

(9)     concluded that both had been drinking (see Ex. 2);

(10)    then searched for witnesses to the accident and was unsuccessful (see Ex. 2);

(11)    spoke with other individuals around the accident scene, including an individual named Mr. Gilbert (Ex. 3, T.29:10-11);

(12)    went to Mr. Gilbert's house to use his house phone to call his supervisor, Sgt. Blades (Ex. 3, T.29:20-T.30:9);

(13)    called his supervisor, Sgt. Blades, for advice on what to do with the information that he had gathered that both individuals were claiming that the other was driving (Ex. 3, T.30:12-21);

(14)    called Sgt. Blades for the purposes of getting advice on what to do at the scene (Ex. #3, T.31:6-8);

(15)    was told by Sgt. Blades to return to the scene and investigate further, *i.e.*, look at the car, speak to the occupants again, see if there were any witnesses, and try to determine who was the driver of the vehicle (Ex. 3, T.31:10-16);

(16)   after getting advise from his supervisor, returned to the accident scene and ran checks on the drivers' licenses of Litzinger and Everett and the registration on the vehicle (Ex. 3, T.37:5-6);

(17)   spoke with individuals at the scene and began to determine if any had witnessed the accident (Ex. 3, T.37:7-21);

(18)   called over the radio to run the registration on the vehicle (Ex. 3, T.39:10-21);

(19)   based on the fact that the vehicle was registered to plaintiff Litzinger, defendant McGuirk concluded that she, therefore, was the operator of the vehicle (Ex. 2, response No. 6);

(20)   after obtaining the driver's licenses from plaintiff Litzinger and Brandon Everett, and not finding any other witnesses to the accident, defendant McGuirk, at this point, placed handcuffs on plaintiff Litzinger based solely on the fact that she was the registered owner of the vehicle (see Ex. 2, answer No. 6, and Ex. 3, T.58:5);

(21)   plaintiff Litzinger cooperated with the handcuffs being placed on her, did not struggle, nor was she given any reason why the handcuffs were being placed upon her (Ex. 3, T.59:3-7);

(22)   then escorted Litzinger approximately 50 yards back to the patrol vehicle, where she was placed in the passenger front seat of the patrol car with the door closed behind her (Ex. 3, T.60:15-16, and T.62:5-6);

(23)   observed no problems with the plaintiff walking the approximate 50 yards back to his vehicle, she had no problem standing unassisted, and walking unassisted (Ex. 3, T.60:15, T.92:17, and T.93:1-3).

Defendant McGuirk states that he placed the plaintiff in handcuffs for his "safety and for further investigation," and he then "escorted her to [his] patrol vehicle without incident and sat her in the front passenger seat." He then "entered [his] vehicle and began

6

questioning [plaintiff] regarding the accident." (Ex. 2, answer to interrogatory No. 6.)[1] After placing plaintiff in handcuffs and in the front passenger seat of his car, McGuirk then returns to the house of Mr. Gilbert to phone his sergeant a second time, leaving plaintiff unattended, handcuffed, and essentially imprisoned in McGuirk's patrol car for a period of time. (Ex. 3, T.62:5-6, and T.64:17-20, and T.65:1-2.)

During the conversation with Sgt. Blades, McGuirk's supervisor, McGuirk informed the sergeant again of the circumstances, and Sgt. Blades then advised McGuirk that he does not have "enough information to put her in the driver's seat." (Ex. 2, response No. 6.)

After a period of time to converse with his supervisor, McGuirk returned to his patrol vehicle to find Ms. Litzinger gasping for air and saying that she couldn't breathe (Ex. 3, deposition of McGuirk T.65:12-17). At this point, McGuirk radioed for an ambulance to assist Ms. Litzinger.

Despite McGuirk's supervisor essentially advising him that he did not have enough "probable cause" to detain plaintiff, and despite the fact that Ms. Litzinger was complaining of pain and an inability to breathe, McGuirk continued to have Litzinger restrained in handcuffs and confined within his patrol vehicle. The handcuffs were only removed when

---

[1]In defendant's deposition dated February 10, 2004, there is no mention of additional investigation after placing plaintiff in the patrol car. After plaintiff was handcuffed and placed in the car, McGuirk calls Sgt. Blades for the second time. (Ex. 3, T.62:1-11.)

the ambulance arrived and requested to do so. (Q. ". . . . you take the handcuffs off, and that's when the ambulance arrives?"; A. "Yes, sir. "; Ex. 3, T.68:3-5). (See also Ex. 3, T.67:11-20).

Defendant has no idea of how much time plaintiff unjustly remained handcuffed in his vehicle. However, "[t]hey come up to the car, they bring the stretcher up to the car, she stays seated in the car while they talk to her. Then she's taken out of the seat of my vehicle and put on the stretcher. They immobilize her and put her in the ambulance." (See Ex. 3, deposition of McGuirk, T.68:9-20, and T.69:1-20.). ". . . there's somebody standing outside the door telling the trooper that he needs to take the handcuffs off because I remember that. 'You need to take the handcuffs off that girl.' That's what I remember." (See Ex. 4, deposition of Litzinger, T.85:10-14.)

After the arrival of the ambulance, plaintiff was taken by ambulance to the hospital and McGuirk "continued with [his] investigation." (Ex. 2, interrogatory answer No. 6.) Neither plaintiff nor Brandon Everett were charged with any offense in reference to this incident. Defendant never saw either person drive the car, nor did he have any physical evidence to show that plaintiff was the driver or that she was intoxicated. Importantly, Mr. Everett was free to leave the scene at any time, but Q. [w]as [plaintiff] free to leave?; A. "No, sir." (See Ex. 3, deposition of McGuirk, T.79:9-13.)

III.
Argument

A. Investigatory Stop v. Arrest

Defendant McGuirk had no legal authority to place plaintiff under arrest when he put his hands upon her, placed her in handcuffs, escorted her approximately 50 yards to his patrol vehicle, placed her inside his patrol car, and closed the door behind her, and left her imprisoned in the vehicle while he made a five to ten minute phone call to his supervisor, and no authority to leave her arrested and in his custody and imprisoned within his vehicle until the medical ambulance arrived at the scene. Defendant McGuirk's actions clearly violated plaintiff's constitutional rights complained of herein.

There is no doubt that under the facts of this case, McGuirk placed plaintiff under arrest. In addition to the previously stated facts, McGuirk admits that Ms. Litzinger was not free to leave his custody and admits placing her in detention. (See Defendant's Motion for Summary Judgment, page 11, and Ex. 3, deposition of McGuirk, T.51.) Defendant also argues that he was entitled to take plaintiff into custody on the belief that she violated Maryland laws prohibiting driving while intoxicated and negligent driving. (See Defendant's Motion for Summary Judgment, page 11.)

"Under the Maryland law, an arrest is the detention of the accused with the intention to prosecute him for a crime. The detention occurs when the officer restrains the accused or otherwise give [her] to understand that [she] is under arrest and submits." *Shorey v.*

9

*Warden, State of Maryland Penitentiary*, 401 F.2d 474, 477 (4th cir. 1968), *citing Duffy v. State*, 243 Md. 425, 431 (1966). "The Maryland rule does not differ substantially from the federal rule which prescribes that the arrest occurs when the police restrict the accused's liberty of movement. *Shorey* at 477, *citing Henry v. United States*, 361 U.S. 98, 103; *United States v. Gearhart*, 326 F.2d 412, 413 (4th Cir. 1964).

While it is true that the placing of handcuffs on an accused does not elevate a detention into an arrest, the purpose of a "Terry stop" or detention is to "maintain the status quo while obtaining more information." *United States of America v. Berate*, 719 F.2d 706, 710 (4th cir. 1983), and *citing Adams v. Williams*, 407 U.S. 143, 146 (1972); *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). The purpose of the "investigative detention" is to allow the police officer to conduct, or continue his investigation, and, if necessary, to restrain the individual for safety reasons. The facts of this case do not support the contention that any safety issues were involved that warranted placing Ms. Litzinger in handcuffs and removing her from the scene of the accident to be confined within the police vehicle. In fact, the exact opposite is true. Office McGuirk states that plaintiff had no difficulty in any conversation with him, as she cooperated fully, that she was placed in handcuffs without a struggle whatsoever, and, again, without any struggle, allowed to be escorted to the front seat of the police vehicle. (See Defendant's Motion for Summary Judgment, page 18, and Ex. 3, McGuirk's deposition, T.50:8-61.)

10

More importantly, defendant asserts that the purpose of the handcuffing and detention was to further his investigation in a safe environment. However, the undisputed facts listed previously as 1 through 23 all entailed McGuirk's investigation into this accident. The undisputed facts also showed that after Ms. Litzinger was placed in handcuffs and placed in the patrol vehicle, McGuirk's investigation stops. At that point, McGuirk's only investigation is to convey what he has done to his supervisor, who, in turn, instructs McGuirk that he does not have enough probable cause to restrain Ms. Litzinger's freedom. Defendant McGuirk arrived on the scene, observed a vehicle accident, parked his vehicle approximately 50 yards behind the accident, spoke with several people at the accident scene, including Jessica Litzinger and Brandon Everett; he also spoke with a Mr. Gilbert about the accident and used Mr. Gilbert's telephone to call his supervisor on advice on how to proceed with the investigation. After receiving that advice, Officer McGuirk continued his investigation, asking and looking for injuries, talking to people at the scene, inspecting the vehicle, ran checks on the registration and licenses of Litzinger and Everett, called this information over the radio and received information back from the barracks, then concluded that Ms. Litzinger was intoxicated and the driver of the vehicle and, therefore, "arrested her" by placing her in handcuffs and placing her in the control vehicle.

> Q.    "OK. Do you recall that the handcuffs were put on without a struggle?"
>
> A.    "Yes, Sir."

11

Q.    "OK.    And now, after the handcuffs are on, what – what happens at this point?"

A.    "She's escorted to the front seat of my patrol car."

Q.    "OK.    Was there any – any struggle while you are escorting her?"

A.    "No, Sir."

Q.    "Was there any difficult (sic) in walking to the car?"

A.    "No, Sir."

Q.    "OK.    Was she saying anything to you while you were walking to the car?"

A.    "I don't recall."

Q.    "Do you recall saying anything to her?"

A.    "No, Sir."

Q.    "OK.    Do you recall whether she vomited on her way to the car?"

A.    "No, Sir."

Q.    "And you placed her in the front seat of the car?"

A.    "Yes, Sir."

Q.    ". . . Did you open the door for her, or what happened?    Tell me what happened."

A.    "Yes, Sir.    I would have opened the door for her."

Q.    "OK.

A.    "And she was seated in the front seat."

Q.    "Ok – then what happened?"

A.    "I would have went around and probably got in the driver's seat of my car. I don't recall specifics about what happened."

Q.    "What is the next thing you remember doing?"

A.    "Calling Sgt. Blades."

(Ex. 3, deposition of McGuirk, T.60-62.)

Defendant argues that the purpose of the handcuffs was for further investigation. However, as quoted above, after McGuirk handcuffed Litzinger and put her in his car, his investigation stopped. Under the federal rule, an arrest occurs when the police restrict the accused's liberty of movement. The investigation had concluded, nobody's safety was at issue, and Ms. Litzinger was placed under arrest for violations of driving while intoxicated and negligent driving without probable cause.

Even assuming arguendo that plaintiff was merely "detained," then what was the purpose of the detention? It was not for the purposes of a lawful detention, to investigate in a safe environment, because no additional investigation took place, and no safety issues were present. The detention of plaintiff was for the sole purpose of arresting her because McGuirk believed that she was intoxicated and, since she was the owner of the car, that she was the driver and, therefore, guilty of the crime. However no breathalyser test was given and plaintiff had no difficulty conversing and walking.

13

B.    Probable Cause for Arrest.

In the present case, the facts confirm that plaintiff was under arrest. The facts do not support probable cause for that arrest. The information known to the officer at the time was that an accident had occurred and he believed that the occupants had been drinking. However, the driver of the vehicle was not ascertainable.[2] Also, no breathalysers was given and no sobriety tests were performed.

C.    Section 1983 and the Fourth Amendment

"In any § 1983 case, the plaintiff must show that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Cooper v. City of Virginia Beach, Virginia*, 817 F. Supp. 1310, 1313 (4th cir. 1993), *citing West v. Atkins*, 487 U.S. 42, 48 (1988). In the present case, the plaintiff must show that McGuirk deprived her of her Fourth Amendment right to be free from unreasonable seizures.

As a general rule, "whenever a police officer cuffs an individual and restrains [her] freedom to walk away, he has 'seized' that person." *Cooper* at 1313, citing *Terry v. Ohio*, 392 U.S. 1, at 16.

In the present case, plaintiff's Fourth Amendment rights were violated when defendant unreasonably seized her. The seizure was unreasonable because defendant lacked

---

[2]Defendant argues that he had probable cause to place defendant under arrest. However, his authored accident report, which was completed after his "investigation," states that the driver of the vehicle is "unknown." (See, Ex #1, accident report, boxes 44, 47 and 67).

14

the legal authority, and for the "detention" because McGuirk's investigation had concluded at the time of the detention. His only subsequent action was to receive affirmation of the unlawful arrest from his supervisor. As defendant lacked the lawful authority to arrest and/ or detain Ms. Litzinger, the placing of hands upon her also violated her Constitutional rights.

"[T]he police can stop and briefly contain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 109 S. Ct. 1581, 1585 (1989). If nothing else, defendant McGuirk's "detention" deprived plaintiff of her liberty without legal justification, which constitutes false imprisonment. The "reasonable suspicion of criminal activity" was already developed in defendant's mind prior to the handcuffing and detention. Defendant's actions were taken in reverse order. He concluded his investigation, then placed plaintiff in "detention." The restraint of plaintiff served no purpose other than to deprive plaintiff of her freedom and liberties and Constitutional rights.

While it is true that a police officer may arrest a person without a warrant for violating the Maryland vehicle law if he has probable cause to believe that the person has committed a violation of driving or attempting to drive while under the influence of alcohol. Maryland Annotated Code, Transportation Article, §§ 26 – 202(a)(3)(i). In the present case, McGuirk did not have any probable cause to indicate that plaintiff was driving or attempting to drive while under the influence of alcohol. He stated that her eyes were bloodshot and that she

15

had an odor of alcohol.   However, given the late hour and the seriousness of the accident,

plaintiff had no problems with defendant's questioning, had no difficulty standing alone, had

no difficulty standing answering questions, did not stagger and had no difficulty walking the

50 yards handcuffed to a patrol vehicle. She was never given or offered a breathalyser or any

sobriety tests. ( Ex #3, T. 52:9-19).   Officer McGuirk relies solely on the mere fact of an

unreliable source, Brandon Everett, pointing the finger at Ms. Litzinger as the driver, where

the same evidence is presented against the accuser, Mr. Brandon Everett.    However, Mr.

Everett is never detained or questioned about his driving the vehicle while intoxicated, and

defendant's police report states "unknown" as the driver.

## IV.
## Qualified Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of

litigation.'" *Brown v. Gilmore*, 278 F.3d 262, 266-67 (2002), *citing Mitchell v. Forsyth*, 472

U.S. 511, 526 (1985).   The Courts must decide "whether a Constitutional right would have

been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194 (2001).   Next, assuming

that the violation of the right is established, "Courts must consider whether the right was

clearly established at the time such that it would be clear to an objectively reasonable officer

that his conduct violated that right." *Brown*, at 367 (citations omitted).

"To establish an unreasonable seizure under the Fourth Amendment, [Litzinger] needs

to show that [McGuirk] decided to arrest her for [driving while under the influence and

16

negligent driving] without probable cause. *Brown* at 367, *citing Dunaway v. New York*, 442 U.S. 200, 213 (1979); *also citing Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996); *United States v. Al-Talib*, 55 F.3d 923 (4th Cir. 1995). "Two factors govern the determination of probable cause in any situation: 'the suspects conduct as known to the officer, and the contours of the offense thought to be committed by the conduct.'" *Brown* at 368, *citing Pritchett v. Alford*, 937 F.2d 307, 314 (4th Cir. 1992). "Therefore, probable cause 'could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id*.

In the present case, defendant did a investigation, the result of which did not supply enough probable cause to arrest plaintiff over Brandon Everett or any individual at all. The lack of facts to support the arrest is confirmed by defendant's supervisor, indicating that McGuirk did not have enough to detain plaintiff and advised the release of plaintiff. The defendant either had insufficient factual knowledge or lacked legal understanding and needed confirmation from his supervisor on both issues. On the issue of qualified immunity, the Court is required to consider whether the facts, taken in the light most favorable to Litzinger, show that McGuirk's conduct violated a constitutional right. *See Saucier*, 121 S. Ct. at 2156.

The law surrounding qualified immunity as presented by the defendant in his motion for summary judgment is not disputed and can be incorporated hereto. As presented by

17

defendant, the 4th Circuit in *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992), created a three-part test governing qualified immunity and stated that for an officer to rely on the qualified immunity defense, the Court must (1) identify the specific right allegedly violated, (2) determine whether at the time of the alleged violation the right was clearly established, and (3) whether a reasonable person in the officer's position would have known that doing what he did would violate that right.

The right violated is clearly plaintiff's right to be free from unreasonable seizures without probable cause for that deprivation of her liberty.    The right to be free from unreasonable seizures is a clearly established right at the time of the 1999 automobile accident.  The threshold question for the Court in this present case, is whether a reasonable officer in the defendant's position would have known that his action would violate plaintiff's rights. Plaintiff submits that no reasonable officer could have believed , under the facts of this case, that his actions were lawful.

The question for the jury would be whether the actions taken by defendant McGuirk were reasonable under the circumstances.   Plaintiff posed no threat to McGuirk, was cooperating fully with his investigation, and was no risk of flight.  Defendant's pretext of handcuffing and imprisoning plaintiff for the purposes of safety and continuing his investigation are not supported by the facts in this case.  A reasonable officer under these circumstances would know that the biased information presented by Brandon Everett is not

18

reliable.  If it were, then plaintiff's accusation of Mr. Everett being the driver would be just as credible and, therefore, Mr. Everett likewise should have been "detained."  Mr. Everett's self-serving statement is not credible in this situation, and a reasonable officer would have gathered additional information to provide probable cause as to who was the driver of the vehicle, or would not have violated any individual's rights by restraining their movement.

It is quite evident that a reasonable officer would not have acted as defendant did in this instance.  This is supported by Sgt. Blades, supplied with all the facts of the accident, instructing McGuirk that he did not have enough evidence or the right to restrain plaintiff.

If a law enforcement officer arrests without probable cause, the officer may be immune from suit if he can show that (1) it was objectively reasonable for him to believe he had probable cause, or (2) officers of reasonable competence could disagree whether probable existed.  *U.S.C.A. Constitutional Amendment 4*, *Martin v. Mendoza*, 230 F. Supp. 2d. 665 (4th Cir. 2002).  Both these factors fail for the above-stated reasons.  A reasonable officer would have known that the clearly established constitutional law prohibited the actions that McGuirk performed.  The Court must decide on the issue of qualified immunity as to "whether a Constitutional right would have been violated on the facts alleged, and assuming that a violation of the right is established, whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."  *See Saucier v. Katz*, 533, U.S. 194, 200-201 (2001).

19

Viewing the facts in the light most favorable to Litzinger, her Constitutional rights were violated by defendant. The detention of Litzinger would only be lawful if it were conducted on the basis of reasonable suspicion in light of the totality of the circumstances confronting McGuirk at the time. The time for the investigative stop was over, in that McGuirk's investigation had concluded. At that point, McGuirk needed to decide whether to arrest plaintiff or clear the accident scene. He elected to arrest plaintiff based on the information known to him at the time. His assertion that the detention was merely for investigative and safety purposes, again, is not supported by his own admission that after the handcuffing no further investigation took place. Once he was informed that his probable cause and basis for the arrest was not sufficient, by his supervisor, McGuirk released plaintiff reluctantly and belatedly.

## V.
## Conclusion

Plaintiff is entitled to partial summary judgment. Defendant detained her because he did not know what else to do, and upon confirmation that probable cause was lacking, he released plaintiff from arrest.

These arguments hold true as opposition to Defendant's Motion for Summary Judgment. If the Court does not feel that plaintiff Litzinger was unlawfully detained without the requisite probable case, then Defendant's Motion for Summary Judgment must be denied because a genuine issue of material fact is created as to whether under the facts an "arrest"

20

occurred and whether defendant possessed the requisite legal authority to make that arrest and deprive plaintiff of her liberties and constitutional rights.

Defendant is not entitled to qualified immunity. It is well established law that persons are to be free from unreasonable seizures. That right was violated. A reasonable officer in similar circumstances would or should have known that these actions clearly violated plaintiff's rights.

WHEREFORE, plaintiff respectfully requests that this Court grant her motion for partial summary judgment, and to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

_____/s/_____
Duane A. Verderaime
Federal Bar No. 023874
Verderaime & DuBois, P.A.
1231 North Calvert Street
Baltimore, Maryland 21202
(410) 752-8888
Email: legalaff@hotmail.com

Attorney for Plaintiff

21